

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

**PETER C. McKITTRICK**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

M. CAROLINE CANTRELL
LAW CLERK

BEN COLEMAN-FIRE
LAW CLERK

TONIA McCOMBS
LAW CLERK

May 30, 2019

Aurelia Erickson
McGaughey Erickson
65 SW Yamhill Street, Suite 200
Portland, OR 97204

Keith D. Karnes
3875 Wolverine Street NE, Suite 20
Salem, OR 97305

Re: In re Coelho Dairy, Case No. 17-60449-pcm12
Coelho Dairy v. John Coelho, Adv. No. 17-6056-pcm

Dear Counsel:

The purpose of this letter is to rule on the trial held in the above referenced adversary proceeding on January 30, 2019. For the reasons set forth below, I will allow the claim filed by John R. Coelho (Defendant) in a reduced amount. I also conclude that Coelho Dairy (the Dairy or Debtor) is entitled to damages resulting from Defendant's conversion of certain assets belonging to the Dairy and that Defendant's claim will be offset by the amount of those damages. Finally, I conclude that Debtor is not entitled to offset Defendant's proof of claim against his negative capital account balance.

### FACTS

The Dairy is a family partnership that was established in 1972. Joint Statement of Agreed Facts, ¶ I.1. In 1987, the Dairy's partners entered into a Continuation of Partnership Agreement (the CPA) which remains the operative partnership agreement to date. Id. at ¶ I.2.

Defendant managed the Dairy's operations for approximately 45 years. Id. at ¶ I.4. Timothy Coelho (Timothy) runs the Dairy now. Id. at I.3. Several years ago, certain disputes developed between Defendant and the other partners of the Dairy, the details of which I will discuss only where directly pertinent to the matter currently before this court.

In 2014, Defendant filed a suit in state court against the Dairy seeking indemnification. Id. at ¶ I.7. The other partners counterclaimed to dissociate Defendant from the partnership. Id. at ¶ I.8. On September 20, 2016, an arbitrator issued a decision in connection with that litigation. Id. at ¶I.9. The arbitrator decided that Defendant was entitled to indemnification. That decision ultimately resulted in entry of a January 25, 2017, judgment in Defendant's favor in the amount of $158,285 plus interest (the Judgment). Id. at ¶I.9, 10. The arbitrator also decided that there were grounds to dissociate Defendant from the partnership. Id. at ¶I.9.

On December 14, 2016, the Dairy's partners, including Defendant, executed a resolution (the Resolution) which states:

> 1. "RESOLVED: Pursuant to the Arbitration Letter Decision of James C. Edmonds, dated September 20, 2016, and the findings contained therein, and based on the current request of John Coelho, the partners hereby resolve to disassociate John R. Coelho as a partner of Coelho Dairy, a partnership, and shall commence steps to complete John R. Coelho's disassociation from the partnership pursuant to the terms of the Continuation of Partnership Agreement of Coelho Dairy, a partnership, Mr. Edmonds' decision, and Oregon Law."

Id. at ¶I.11; Exhibit 4.[1] Other than passing the Resolution, the partners took no other action in connection with Defendant's dissociation. Statement of Agreed Facts, ¶ II.5.

Debtor filed a chapter 12 bankruptcy petition on February 21, 2017.[2]

In June of 2017, Defendant filed an unsecured claim in the amount of $200,008.22 (the Claim). Exhibit 5. Shortly thereafter, Debtor filed an adversary complaint, asserting three claims against Defendant. In its first claim, Debtor objects to the proof of claim filed by Defendant alleging;

> a. Defendant seeks to recover for alleged loans which have been adjudicated against Defendant or alternatively Defendant seeks recovery of loans to which he is not entitled.
>
> b. [Debtor] is entitled to offset the negative capital account and other damages against the claim that Defendant has filed.

Complaint, ¶ 14. In its second claim, Debtor alleges that Defendant violated the automatic stay when he withdrew partnership funds and used estate property postpetition. In its third claim, Debtor alleges that those same acts by Defendant constitute conversion.

---

[1] The signature of Michael Coelho does not appear on Exhibit 4. Neither party assigns any significance to that fact. The parties agree that at the time the arbitrator issued his decision in 2016, there were four partners: Defendant, Timothy, Michael and Patricia. Statement of Agreed Facts, ¶ II.2, 4.

[2] Unless otherwise indicated, all references to chapter or section are to the Bankruptcy Code, 11 U.S.C. § § 101-1330.

I. <u>Claim Determination</u>

A "claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." § 502(a). Section 502(b)(1) provides that if, as here, a claim is objected to, the court shall determine the amount of the claim as of the petition date and shall allow it except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

There are two components to Defendant's claim. The first component is that attributable to the Judgment ($158,285) plus interest thereon ($5,935.69). Exhibit 5, p. 10. Debtor did not object to this component of the Claim or offer any argument or evidence at trial contesting its validity. Therefore, this component of the Claim will be allowed in the total amount of $164,220.69.

The second component of the Claim is comprised of alleged loans from Defendant to the Dairy in the principal amount of $28,810.99, plus 9% interest totaling $16,049.19. Exhibit 5, p. 9. Defendant received prepetition payments from Debtor in the amount of $9,072.65, leaving an alleged balance due on the petition date of $35,787.53. Exhibit 5, p. 9-10.

The transactions classified as loans (the Loans) in Defendant's proof of claim are shown in Exhibit B. Defendant testified that the April 13, 2009, $12,500 transaction represents his share of the proceeds of a life insurance policy on one of his brothers and that he left those funds in the partnership while the other partners took their shares out for personal use. Defendant and Debtor's former accountant, Mark Coates (Coates), who prepared Exhibit B, both testified that Defendant left the funds in the partnership because he was concerned about the financial health of the partnership at the time. Defendant testified that the October 1 and 21, 2009, and May 14 and 19, 2010, transactions totaling $2,198.78 likely represent partnership bills he paid with personal checks. The $1,393.71 transaction on September 10, 2013, represents repair charges paid by Defendant with his personal credit card for a vehicle owned by the partnership. Timothy testified that the $1,393.71 transaction was a legitimate expense for which Defendant was entitled to reimbursement. Defendant and Coates both testified that the balance of the transactions listed in Exhibit B is attributable to reductions in Defendant's normal draws from the partnership.

Debtor objects to the Loans and argues that this component of the Claim should be disallowed for two reasons. I conclude that this component of the Claim will be allowed, but in a reduced amount.

First, Debtor argues that the arbitrator previously decided that the Loans are unenforceable and suggests, without any legal analysis, that this Court is bound by that alleged determination. Debtor does not explain on what legal theory this Court is bound by the arbitrator's alleged determination. To the extent Debtor contends that issue preclusion applies to bar relitigation of the question of the enforceability of the loans, I disagree.

The preclusive effect of a state court judgment in a subsequent federal action is determined by the law of the state in which the judgment was rendered. <u>In re Nourbakhsh</u>, 67

F.3d 798, 800 (9th Cir 1995). In Oregon, there are five requirements for application of issue preclusion: (1) the issue in the two proceedings was identical; (2) the issue was actually litigated and essential to a final decision on the merits; (3) the party sought to be precluded had a full and fair opportunity to be heard on the issue; (4) the party sought to be precluded was a party to the earlier proceeding; and (5) the earlier proceeding was the type of proceeding to which the court will give preclusive effect.[3] Nelson v. Emerald People's Util. Dist., 318 Or. 99, 104 (1993). "[T]he party asserting issue preclusion bears the burden of proof on the first, second, and fourth factors, after which the party against whom preclusion is asserted has the burden on the third and fifth factors." Barackman v. Anderson, 214 Or. App. 660, 667 (2007).

Debtor has not met its burden of proving that the issue of the enforceability of the Loans was actually litigated in the 2016 arbitration and essential to the arbitrator's final decision. Debtor did not provide this Court with the pleadings from the underlying state court proceeding, but it does not contend that it sought to have the Loans declared unenforceable in the state court litigation. Instead, in response to Defendant's claim for indemnification, Debtor counterclaimed that there were grounds for Defendant's dissociation from the partnership under ORS 67.220.[4] Debtor states in its written closing argument that the arbitrator determined that the Loans "created an issue for the partnership." Doc. 65, p. 5. However, the arbitrator's decision that Defendant should be dissociated under ORS 67.220 based on the Loans and additional factors is not the same thing as a determination that the Loans are unenforceable. There is no evidence that the arbitrator was presented with or decided the issue of whether the Loans were enforceable.

Second, as an alternative argument in support of its claim objection, Debtor alleges in its complaint that Defendant is not entitled to recovery of the Loans. The CPA provides that it "shall be subject to, and governed by, the laws of the State of Oregon." Exhibit C, p. 7. With certain exceptions not pertinent here, "relations among the partners and between the partners and the partnership are governed by the partnership agreement. To the extent the partnership agreement does not otherwise provide, [ORS chapter 67] governs relations among the partners and between the partners and the partnership." ORS 67.042(1).

ORS 67.155(6), provides:

A partner may lend money to . . . the partnership, provided that any loan . . . between a partner and the partnership must be:

    (a) Fair to the partnership;

    (b) Authorized by the partnership agreement; or

    (c) Authorized or ratified by a majority of the disinterested partners or by a

---

[3] In Oregon, arbitration decisions generally are accorded preclusive effect where all the other requirements for application of issue preclusion are met. Barackman v. Anderson, 214 Or. App. 660, 669 (2007).

[4] ORS 67.220 and the arbitrator's decision with regard to Defendant's dissociation will be discussed in more detail below.

>number or percentage of partners specified in the partnership agreement, after full disclosure of all material facts.

ORS 67.155(6). The CPA neither authorizes nor prohibits the Loans, although it does provide, in paragraph 7, that the partners "may borrow money as they may deem necessary to carry on the activities of the business." Exhibit C, p. 2. There is not sufficient evidence that a majority of the disinterested partners authorized or ratified the Loans after full disclosure of all material facts. Therefore, the question comes down to whether the Loans were "[f]air to the partnership." ORS 67.155(6)(a).

Loans between a partner and the partnership are not inherently unfair or improper. In fact, Oregon law contemplates the possibility. Loans between a partnership and a partner "are binding on the parties in the same manner as transactions between the partnership and persons who are not partners, subject to other applicable law." ORS 67.155(7). In addition,

>(3) A partnership shall reimburse a partner for payments made and indemnify a partner for liabilities incurred by the partner in the ordinary course of the business of the partnership or for the preservation of its business or property.

>(4) A partnership shall reimburse a partner for an advance to the partnership beyond the amount of capital the partner agreed to contribute.

>(5) A payment or advance made by a partner which gives rise to a partnership obligation under subsection (3) or (4) of this section constitutes a loan to the partnership that accrues interest from the date of the payment or advance.

ORS 67.140. A partner does not violate his or her "duty or obligation under this chapter or under the partnership agreement merely because the partner's conduct furthers the partner's own interest." ORS 67.155(5).

The transactions constituting the Loans occurred from 2009 - 2013. Defendant testified, without contradiction, that when the Loans commenced in 2009, the Dairy was desperately in need of funds and that its bank had taken action to limit the Dairy's ability to make withdrawals. There is no indication that the Dairy's financial situation improved in any significant way during the period in which the Loan transactions took place. Timothy testified that in 2016, the Dairy's finances were not strong, there was a lot of unpaid debt, and that Columbia Bank was in the process of foreclosing.

I conclude that Defendant has met his burden of showing that the Loans were fair to the partnership with one qualification. Mr. Coates, Defendant's own witness, testified that a 9% interest rate was unreasonably high and that a rate in the range of 4-5% would be reasonable. Therefore, I conclude that the applicable interest rate for the Loans should be reduced from 9% to 4%.

II. <u>Conversion</u>

Under Oregon law, conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may

justly be required to pay the other the full value of the chattel." <u>Mustola v. Toddy</u>, 253 Or. 658, 663-64 (1969) (quoting Restatement (Second) of Torts).  Debtor alleges in the complaint that Defendant's withdrawal of partnership funds and use of partnership property constitutes conversion.  Defendant argues that there was no conversion because he remains a partner and thus was entitled to share in partnership assets.

Exhibit 6 lists the withdrawals at issue.[5]  Timothy testified that the transactions through December of 2016 listed under the headings "ODS Health INS," "Trans America Ins," and "Partner Draw" were appropriate because Defendant was still working for the Dairy at the time.  Timothy also testified that the transactions from October 2016 through January 2017 under the heading "Credit Card Pmt" represent legitimate partnership expenses.

The balance of the transactions, which total $47,522.98, represent funds to which John was not entitled because he was not working for, and had been dissociated from, the partnership when the transactions took place.  John's use and withdrawal of those funds constitutes conversion and I will award damages to Debtor in the amount $47,522.98.[6]

The CPA provides:

Each of the partners shall be required [to] work for the partnership on a full time or part time basis in order to receive a reasonable cash draw from the partnership, unless the partners agree that some other draw should be allowed for temporary disability or other

---

[5] Debtor also alleges that the same transactions violate the automatic stay imposed under § 362.  Defendant concedes in his trial memo that the postpetition withdrawals listed in Exhibit 6 "likely . . . were not permissible under the automatic stay." Defendant's Trial Memorandum, p. 7.  I am inclined to agree to the extent the transactions listed on Exhibit 6 occurred after the date Debtor filed its chapter 12 petition.  However, because Debtor is not an individual, § 362(k) does not govern the determination of appropriate damages.  <u>In re Goodman</u>, 991 F.2d 613, 619 (9th Cir. 1993).  Instead, I would need to find that there was clear and convincing evidence that Defendant committed civil contempt to award damages for a violation of the automatic stay under § 105(a).  <u>In re Pace</u>, 67 F.3d 187 (9th Cir. 1995).

"Before imposing civil contempt sanctions for a violation of the automatic stay, the court must find that the defendant knew of the automatic stay and that his actions which violated the stay were intentional." <u>In re Fatehmanesh</u>, 2018 Bankr. LEXIS 460, *28 (9th Cir. BAP February 6, 2018).  The Ninth Circuit Court of Appeals has clarified that a creditor's good faith belief that the stay does not apply "precludes a finding of contempt, even if the creditor's belief is unreasonable." <u>In re Taggart</u>, 888 F.3d 438, 444 (9th Cir. 2018), cert. granted, 202 L.Ed.2d 511 (2019).  I am unable to find that contempt damages are appropriate given the standard imposed by <u>Taggart</u> and the facts of this case.

[6] Although Debtor also alleges that Defendant's use of certain personal property belonging to the Dairy, such as an automobile, constitutes conversion, it failed to prove that Defendant's use of the property was sufficiently serious to justify requiring him to pay Debtor the full value of the property at issue or offer any evidence of the full value of the property in question.  Therefore, I will not award any damages in connection with Defendant's use of the Dairy's personal property.

similar reason.

Exhibit 1, ¶ 7. John testified that he stopped working for the partnership at the end of 2016 and, other than as noted above, Timothy testified that the partnership did not authorize the withdrawals at issue.

Moreover, at the time of the transactions at issue, John had been dissociated as a partner and thus was no longer entitled to receive distributions of partnership assets. A dissociated "partner's right to participate in the management and conduct of the partnership business terminates" upon dissociation. ORS 67.230(2)(a). The Revised Uniform Partnership Act (RUPA) "reduces the status of dissociated partners to that of nonequity claimants." Robert W. Hillman, RUPA and Former Partners: Cutting the Gordian Knot with Continuing Partnership Entities, 58 Law and Contemporary Problems 7, 18 (Spring 1995).

ORS 67.005(3) defines a "dissociated partner" to be "a partner with respect to whom an event specified in ORS 67.220 has occurred." ORS 67.220 provides, in part:

> A partner is dissociated from a partnership upon the occurrence of any of the following events:
>
> * * * * *
>
>> (5) On application by the partnership or another partner, the partner's expulsion by judicial determination because:
>>
>> * * * * *
>>
>>> (a) The partner engaged in wrongful conduct that adversely and materially affected the partnership business;
>>>
>>> (b) The partner willfully or persistently committed a material breach of the partnership agreement or of a duty owed to the partnership or the other partners under ORS 67.155; or
>>>
>>> (c) The partner engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with the partner[.]

ORS 67.220. The phrase "judicial determination" is intended to include an arbitration award, as well as any final court order or decree. Uniform Partnership Act (1997), § 601, Comment 6.

The arbitrator concluded that there was cause to dissociate Defendant under subsection (c) of ORS 67.220(5) because Defendant's loans and credit card use and the litigation between

the partners had resulted in a dysfunctional partnership relationship.[7] Exhibit 3, p. 8. The arbitrator went on to state that his finding triggered the ability of one partner to seek termination of the CPA under paragraph 17 of that document. However, termination of the CPA is different and distinct from dissociation of a partner. The applicable statutes, (ORS 67.005(3) and ORS 67.220) make clear that Defendant's dissociation was effective upon issuance of the arbitrator's letter.[8]

The dissociation of a partner triggers the application of certain statutes depending on whether the dissociation results in dissolution and winding up of the partnership business. If, as is the case here, the dissociation does not result in dissolution and winding up of the partnership, ORS 67.250 - 67.265 apply. ORS 67.230(1). ORS 67.250(1) provides that the partnership "shall cause the dissociated partner's interest in the partnership to be purchased for the buyout price determined pursuant to subsection (2) of" ORS 67.250. Defendant testified that he decided to continue taking funds out of the partnership until the Dairy came up with a buyout price. The buyout of Defendant's partnership interest and its impact on the issues presented in this case will be discussed in more detail below. However, at this stage, suffice it to say that the fact that Defendant's dissociation triggered the Dairy's obligation to buy out his partnership interest is not a defense to a claim of conversion. A creditor may not, without process, "'dispossess his debtor of his goods, and then mitigate or defeat a recovery by showing that the property taken has, without any assent or concession of the debtor, been applied on the debt.'" McCarthy v. General Electric Co., 151 Or. 519, 524 (1935) (quoting Northrup v. McGill, 27 Mich. 234 (1873)).

III. Setoff

Debtor alleges in its complaint that it is entitled to offset Defendant's negative capital account and other damages against Defendant's claim. Defendant does not dispute Debtor's setoff claim as it pertains to any damages awarded in this adversary proceeding. However, Defendant does dispute that an offset of his claim against his negative capital account balance is appropriate.[9]

As a threshold matter, it is critical to understand that neither Defendant nor Debtor has asked this court to determine a buyout price for Defendant's interest in the Dairy. As I discuss above, Defendant's proof of claim contains two components: the Judgment and the Loans.

---

[7] The fact that the arbitrator did not expressly rely on ORS 67.220(5)(a) or (b) in deciding that John should be dissociated also tends to show that the arbitrator did not determine that the Loans were unenforceable for purposes of issue preclusion.

[8] Even if I am incorrect that John was dissociated as of the date of the arbitrator's decision, and I do not think that I am, he certainly was dissociated as of December 14, 2016, the date of the Resolution. See ORS 67.220(1) (partner dissociated when the partnership receives notice of the partner's desire to withdraw from partnership).

[9] The parties disagree whether Defendant's capital account properly calculated is, in fact, in a negative status. For the purpose of ruling on this matter, I will assume, without deciding, that it is.

Defendant has not asserted a claim for the buyout of his partnership interest.[10] Moreover, Debtor did not include in its adversary complaint a claim for determination of the price due to Defendant as a result of his dissociation from the partnership.

The party asserting a right to setoff "must establish that it has a right of setoff under nonbankruptcy law and that the requirements of § 553 are met." In re Silver Eagle Co., 262 B.R. 534, 536 (Bankr. D. Or. 2001). Section 553 requires that "'(1) the debtor owes the creditor a prepetition debt; (2) the creditor owes the debtor a prepetition debt; and (3) the debts are mutual.'" Id. at 537 (quoting In re Luz Int'l, Ltd., 219 B.R. 837, 843 (9th Cir. BAP 1998)). Debtor fails on two accounts.

First,

> Section 553 of the Bankruptcy Code does not create any setoff right; it merely preserves certain rights of setoff that exist under applicable nonbankruptcy law. Because Section 553 merely preserves rights of setoff that otherwise exist, a court may not employ the statute to enlarge a party's right of setoff in bankruptcy. Thus, the threshold question in every case involving an asserted right of setoff is the source and validity of the underlying right. The right may exist as a matter of state or federal law, as the case may be.

5 COLLIER ON BANKRUPTCY ¶ 553.04 (Richard Levin & Henry J. Sommer eds., 16th ed.)(footnotes omitted). Debtor does not cite, and the court is not aware of, any federal or state law conferring a setoff right.

Second, Debtor identifies the requisite prepetition debt owed by Defendant to be his negative capital account balance. See Doc. 65, p. 9. A "debt" is a liability on a claim. § 101(12). As pertinent here, a claim is a right to payment. § 101(5)(A). Debtor has not shown that Defendant's negative capital account gives rise to a present right to payment from Defendant.

Debtor argues that the CPA "contains a provision specifically for capital accounts." Doc. 65, p. 10. However, that provision does not provide that a partner's negative capital account

---

[10] ORS 67.250(9) provides, in part:

> A dissociated partner may maintain an action against the partnership . . . to determine the buyout price of that partner's interest, any offsets under subsection (3) of this section or other terms of the obligation to purchase. The action must be commenced within 120 days after the partnership has tendered payment or an offer to pay, or within one year after written demand for payment if no payment or offer to pay is tendered.

Subsection (3) of ORS 67.250 provides that damages for wrongful dissociation "and all other amounts owing, whether or not presently due, from the dissociated partner to the partnership, must be offset against the buyout price." I am not presented with, and thus do not decide, whether Defendant may maintain an action against the Dairy to determine the buyout price of his partnership interest in the future given his failure to do so to date.

constitutes a debt owed to the partnership.[11]  In its Closing Argument, Debtor quotes from a law review article for the proposition that under the RUPA, "'a negative capital account reflects a debt to the partnership that must be repaid either upon liquidation or upon buyout.'" Doc. 65, p. 11 (quoting Donald J. Weidner, <u>Capital Accounts in LLCs and in Partnerships: Powerful Default Rules and Potential Tax Significance</u>, 14 FSU Business Review 1 (Spring 2015)).  The problem is that neither of those two circumstances are implicated in this case.  There is no contention that the Dairy's partnership is being liquidated and, as I explain above, the matter currently before the court does not involve a determination of the buyout price of Defendant's partnership interest in the Dairy.

Conclusion

Defendant's claim shall be allowed in the amount of $164,220.69 for the Judgment plus an amount to be determined that is attributable to the Loans.  Debtor is entitled to set off against Defendant's total claim the amount of $47,522.98, which sum represents damages awarded to Debtor as a result of Defendant's conversion.  For ease of computation, that leaves a $116,697.71 balance due for the portion of Defendant's claim that is attributable to the Judgment.  With regard to the Loans, the parties shall confer to determine the remaining amount due to Defendant for the Loans after taking into account a reduction in the interest rate from 9% to 4% for the life of the Loans.   If the parties are unable to reach an agreement on that issue, Defendant shall notify the Court of that fact no later than 14 days after entry of this letter on the docket.

Ms. Erickson  shall submit a judgment no later than 14 days after entry of this letter on the docket and shall file an amended proof of claim reflecting the Court's decision in this proceeding within 14 days after entry of the judgment.

Sincerely,

PETER C. MCKITTRICK
Bankruptcy Judge

---

[11]   Paragraph 5 of the CPA provides:

> The partners shall have separate capital accounts.  The partners shall contribute such sums as may be required by the business to the capital of the partnership.  Each partner shall contribute his prorata share of the said amount based on his partnership interest.

Exhibit 1, p. 2.

Aurelia Erickson
Keith D. Karnes
May 30, 2019
Page 11

cc: Virginia Andrews Burdette (via ECF)